**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ALAN L., on behalf of himself and his minor child, J.L., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No.: |
| LEXINGTON PUBLIC SCHOOLS; LEXINGTON SCHOOL COMMITTEE; DR. JULIE HACKETT, in her individual and official capacity as Superintendent of the Lexington Public School District; DR. GERARDO J. MARTINEZ, in his individual and official capacity as Principal of Joseph Estabrook Elementary School and; ANDREA SO, in her individual and official capacity as Director of Elementary Education, | ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT** |
| Defendants. | ) | |

Plaintiff, Alan L., on behalf of himself and his minor child, J.L. (hereinafter "Plaintiff"), brings this action for declaratory, compensatory, and injunctive relief to vindicate his constitutional and civil rights to direct the religious and moral upbringing of his minor child without government interference or coercion and to secure his child's right to the free exercise of religion.

## I.    PRELIMINARY STATEMENT

1.    The Constitution of the United States of America protects the rights of parents to direct the religious and moral upbringing of their children. Public Schools and their officials cannot use the power of the State to override those parental decisions or impose moral instruction contrary to the parent's requests and instructions. Yet, that is precisely what occurred here.

2.    This case arises from the deliberate and unconstitutional actions of Defendants—officials of the Joseph Estabrook Elementary School within Lexington Public Schools and the

Lexington School Committee—who compelled a kindergartner to participate in classroom instruction that promoted sexualized and ideological messages directly contrary to his family's faith, despite the Plaintiff's repeated written requests for an exemption. Defendants' conduct demonstrates an overt disregard for parental rights, transparency, and religious liberty.

3.     Defendants not only ignored Plaintiff's opt-out requests but also obstructed his ability to exercise his opt-out rights by refusing to provide curriculum materials in advance. After failing to provide the requested information, Defendants then faulted Plaintiff for failing to identify specific lessons to which he objected—an impossible condition that rendered the parental opt-out right meaningless. Such circular reasoning and administrative delay reveal a pattern of bureaucratic evasion designed to frustrate faith-based parental decision-making.

4.     Through their actions, Defendants have violated well-established constitutional principles protecting both the free exercise of religion and the right of parents to control the moral and spiritual education of their children. By privileging secular ideology over faith-based objections, Defendants have sent a clear message: parents of faith will not be heard.

5.     Absent relief, Defendants' actions will continue to chill the rights of Plaintiff and similarly situated parents to religious liberty under the First Amendment and to the procedural and substantive due process guarantees protecting the parent-child relationship under the Fourteenth Amendment. The precedent created by the Defendants' actions threatens to erode the constitutional boundary between state authority and family autonomy. Parents will be forced to choose between sending their children to public school and preserving their ability to live out their faith—an intolerable choice that the First and Fourteenth Amendments forbid.

## II.    PARTIES

6.    Plaintiff, Alan L., is a resident of the Commonwealth of Massachusetts and the parent of a minor child enrolled in Lexington Public Schools ("District"). Plaintiff is a devout Christian whose sincerely held religious beliefs guide every aspect of his family life, including the upbringing and education of his child and his duty to protect his family from further government interference and coercion.

7.    Plaintiff Alan L. brings this lawsuit on his own behalf and behalf of his minor child, J.L.

8.    Lexington Public Schools is a body politic and corporation and is sued in its official capacity.

9.    The Lexington School Committee ("LSC") has broad authority over public education in their districts, including policymaking, hiring of superintendents, and management of schools. LSC is sued in its official capacity.

10.    Dr. Julie Hackett is, and at all times relevant to this Complaint, the Superintendent of Lexington Public schools tasked with managing the school system in Lexington.

11.    Dr. Julie Hackett supervises the Principal of Joseph Estabrook Elementary School in the operation of the school.

12.    Dr. Julie Hackett has a managerial and supervisory role over District policy, including opt-out policies consistent with state and federal law and constitutional provisions.

13.    Defendant Hackett is sued in both her official capacity and individual capacity.

14.    Dr. Gerardo J. Martinez is, and was at all times relevant to this Complaint, the Principal of Joseph Estabrook Elementary School, and was responsible for the supervision, operation, and management of the school and school property.

15.     Defendant Martinez is responsible for the enforcement of District policy at Estabrook Elementary, including curriculum opt-out procedures consistent with state and federal law and constitutional provisions.

16.     Defendant Martinez is sued in both his official capacity and individual capacity.

17.     Andrea So is, and was at all times relevant to this Complaint, Director of Elementary Education for Lexington Public Schools.

18.     Defendant So, in her capacity as Director of Elementary Education, is responsible for curriculum opt-out requests, and in that capacity denied Plaintiff's repeated opt-out requests.

19.     Defendant So, in her capacity as Director of Elementary Education, did not provide curriculum information to Plaintiff until after the undesired content was shown to Plaintiff's child.

20.     Defendant So is sued in both her official capacity and individual capacity.

21.     All defendants are responsible for the implementation and application of the opt-out procedures as applied to Plaintiff.

22.     Defendants are officials and representatives of the Joseph Estabrook Elementary School ("School") within Lexington Public Schools, including the Superintendent of the District, the Principal of the School, and other relevant administrators and agents acting under color of state law. Each Defendant, individually and collectively, is responsible for the policies, customs, and practices challenged in this action, which directly violated Plaintiff's constitutionally protected rights.

### III.    JURISDICTION AND VENUE

23.     This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, enforceable under the Civil Rights Act, 42

U.S.C. § 1983 *et seq*, which provides a cause of action against state officials who, under color of law, deprive individuals of constitutional rights.

24.    This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. § 1331.

25.    This Court's supplemental jurisdiction over Plaintiff's claims under the Massachusetts Constitution and state law is proper pursuant to 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative facts.

26.    This Court has authority to award the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested compensatory and injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

27.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and all the acts described in this Complaint occurred in this district.

## IV.    FACTUAL ALLEGATIONS

28.    Plaintiff is the parent of a kindergarten student enrolled in Lexington Public Schools. Plaintiff is a practicing Christian whose sincerely held religious beliefs require that he, not the State, direct the moral and spiritual formation of his child.

29.    In particular, Plaintiff holds to a biblical view of marriage, gender, and sexuality. He and his family believe that God created people in His image either male or female (see Gen. 1:27) and that human sexuality is a gift to be expressed only within the context of a one-man, one-woman marriage (see Matt. 19:5).

30.    Plaintiff and his family also believe that God created all people, regardless of skin color, in His image and that children should be taught to judge others by the content of their character rather than the color of their skin (see Acts 10:34-35).

31.     Finally, Plaintiff believes that it is his role as a parent to instill good values into his child, such as respect, kindness, and empathy, and to shape his child's concept of the world and of different identities, exclusively from a Christian worldview (see Prov. 22:6).

32.     Prior to the start of the 2025–2026 academic year, Plaintiff contacted District officials to make them aware of his concerns regarding content that might be in his child's Health and "Diversity, Equity, and Inclusion" ("DEI") curriculum. He asked that his child be opted out of the first Health lesson and all DEI lessons, and asked to be able to review the curriculum for both of these classes.

33.     In particular, on August 25, Plaintiff met with his child's teacher, Caroline Chestna, and Student Support Instructor, Alexis Bonavita, to express concerns about content in the kindergarten curriculum.

34.     Following that meeting, Plaintiff emailed Ms. Chestna and Ms. Bonavita requesting J.L.'s full schedule and the syllabus of the classes and asked that J.L. be opted out of health class.

35.     Plaintiff also requested that J.L. be opted out of any DEI curriculum. He made clear that "as a parent, I am heavily interested in what is being taught to my child and the only way I can be sure is for me to go through everything myself."

36.     On August 25, 2025, Ms. Chestna replied with links to generic curriculum overview documents that did not contain detailed information about specific lessons. She stated that she would try to obtain more detailed information for Plaintiff.

37.     On August 28, 2025, Defendant Andrea So, Director of Elementary Education, emailed Plaintiff rejecting his Health and DEI opt-out requests, stating "a request for religious opt-out may be denied or returned for clarification if it does not clearly identify the specific *required* curriculum or instructional material at issue, or if it lacks sufficient detail to allow

for meaningful review. Requests that are based on general educational disagreements, pedagogical preferences, philosophical views, or personal opinions, rather than sincerely held religious beliefs, do not qualify for exclusion under the *Mahmoud v. Taylor* standard."

38.    Defendant So further stated, "[y]our requests as written are overly broad and require further clarification as they seek to opt out of broad topics."

39.    Plaintiff replied the same day, stating that he and his child are Christians and reiterating his opt-out requests.

40.    On August 29, 2025, Plaintiff submitted a public records request via Lexington's online portal for information regarding each of the Health, Social Studies, and DEI lessons that J.L. would be taught.

41.    The Defendants did not respond to Plaintiff's public records request by the 10-business-day statutory deadline, releasing only partial information that did not allow Plaintiff to identify specific lessons or content to which he objected. In the meantime, unbeknownst to Plaintiff, the Defendants were actively violating his rights by showing his child materials that directly violated his opt-out request – as more fully explained below. To date, Plaintiff has still not received a response to his public records request.

42.    On August 30, Plaintiff submitted a written request to school officials seeking to opt his child out of classroom lessons and materials addressing moral or social topics inconsistent with his family's faith (*see* Exhibit A, Request).

43.    In particular, Plaintiff requested that his child be exempted from "lessons, events, school assemblies or other instructional activities and programs which cover issues of sexual orientation or gender identity, pursuant to the U.S. Supreme Court's decision in Mahmoud v.

Taylor." Plaintiff made this request in good faith, citing his religious convictions and parental rights under the United States and Massachusetts Constitutions.

44.    On September 5, Andrea So, Director of Elementary Education at the District, responded to Plaintiff's opt-out request, stating that it lacked "sufficient detail to allow for meaningful review" and asked that he re-submit his opt-out request "with more information regarding a specific lesson" (*see* Exhibit B, Email).

45.    Because the District had not produced specific information about the lessons and curricular materials they intended to use in Plaintiff's child's classes, Plaintiff had no way to comply with Ms. So's request for more specificity.

46.    On September 10, Plaintiff's counsel sent a letter to the District to further clarify Plaintiff's religious beliefs and to reiterate his requests to opt his child out of any instruction or other required activities that normalized or promoted LGBTQ identities or lifestyles, as well as the Kindergarten DEI curriculum (*see* Exhibit C, Letter).

47.    On September 19, almost a month after Plaintiff first asked for an opportunity to review his child's curriculum, he received an email with links to the Health curriculum from Andrea So. All the links were accessible except for the links to Units 2 and 3, entitled "Families are Special" and "We're All Different and Special." Plaintiff had to send a follow-up email requesting access to these links specifically.

48.    When Plaintiff was finally granted access to these links days later, he learned that J.L. had already been shown a video in Health class containing themes and messages he had explicitly sought to avoid through his opt-out request. The video was a read-aloud featuring the book "Families, Families, Families" by Suzanne Lang.

49.    On September 16, 2025—one day after the statutory deadline for the public records request expired, six days after Plaintiff's counsel sent a detailed opt-out letter, 17 days after his initial opt-out letter, and 22 days after Plaintiff's initial request to "go through everything" his child was going to be taught—Defendants showed Plaintiff's child a read-aloud video for the book *Families, Families, Families*[1] in his health class.

50.    The book conveys the message that all family arrangements are equally morally acceptable.

51.    The book shows two roosters in neckties holding each other and their chicks, stating "some children have two dads." It then shows two female koalas with their babies and states "some children have two mothers." The book ends with the line, "whatever it might be, if you love each other, then you are a family" (*see* Exhibit D, Book Excerpts).

52.    The book was shown to Plaintiff's child in direct contravention to Plaintiff's request that his child be exempted from any instruction that normalized LGBTQ relationships.

53.    This occurred despite the fact that:

 a.  Defendants had received multiple written opt-out requests specifically referencing LGBTQ content;

b.  Defendants had been on notice of Plaintiff's religious objections;

c.  No emergency or compelling reason required showing this video on this specific date; and

d.  Defendants could easily have delayed this lesson or provided alternative instruction.

---

[1] Available at https://www.youtube.com/watch?v=PScc9Hbgc-0.

54.    Plaintiff was not notified that this video would be shown on September 16, 2025, or at any time prior to the lesson. He learned of the violation only after reviewing curriculum materials belatedly provided weeks later.

55.    Upon information and belief, while Plaintiff was waiting for copies of the Social Studies curriculum, his child was also shown a book in his Social Studies class called *All Are Welcome* by Alexandra Penfold which contains illustrations of gay and lesbian couples and their children, including a pregnant lesbian mother[2] (*see* Exhibit E, Book Excerpts).  This also directly violated Plaintiff's opt-out request.

56.    On September 23, for the first time since Plaintiff requested to review the curriculum and at the advice of their counsel, the District offered to allow Plaintiff to review the curriculum in person. But it was too late: the above violations had already occurred.

57.    When Plaintiff raised his concerns with school officials about *Families, Families, Families*, Defendants acknowledged that the lesson had taken place.

58.    Defendants failed to explain how Plaintiff could have identified the specific materials to which he objected when the Defendants had withheld those materials in the first place.

59.    This refusal deprived Plaintiff of any meaningful opportunity to opt out before his child was exposed to objectionable classroom content, effectively denying him procedural due process.

60.    Defendants' failure to provide prior notice or access to the curriculum also deprived Plaintiff of the ability to make informed decisions regarding his child's education—rights that are central to the liberty interests protected by the Fourteenth Amendment.

---

[2] Available at https://www.youtube.com/watch?v=Pl9PDHexBqY.

61.     Through these actions, Defendants disregarded constitutionally required safeguards of notice, transparency, and parental consent, thereby infringing Plaintiff's substantive and procedural due process rights.

62.     By requiring Plaintiff's child to participate in classroom instruction that is unmistakably normative and contradicts his family's faith by normalizing and celebrating LGBTQ relationships and identities, Defendants have burdened Plaintiff's free exercise of religion and infringed upon his right to direct the upbringing of his child.

63.     As a direct result of Defendants' conduct, Plaintiff and his child have suffered concrete injury, loss of trust in the school system, and the violation of their constitutional rights. Plaintiff has now had to do "damage control," discussing these sensitive issues with his 5-year-old child much earlier than he ever wanted to. His child's innocence on these subjects has been compromised. Plaintiff now feels that he is in an adversarial relationship with the school and that he will need to work to convince his child that his family's religious beliefs, and not the school's values, are correct.

64.     Plaintiff has now identified, to the best of his ability, the specific lessons in the Health, DEI, and Social Studies curricula that violate his family's religious beliefs. However, Defendants have represented to Plaintiff that the curriculum is subject to change throughout the year.

65.     In addition, Plaintiff continues to lack access to some materials in the curricula.

66.     Despite this, Defendants refuse to commit to providing Plaintiff with notice and an opportunity to opt out of the content he has identified as conflicting with his religious beliefs. Instead, they are continuing to place the burden on Plaintiff to identify each specific lesson or material he objects to, without giving him the means to do so.

67.    Defendants regularly provide notice and an opportunity to opt other students out of content that their parents find objectionable, including but not limited to sex education materials covered under M.G.L. c. 71, § 32A. Yet, they failed to provide Plaintiff with these same rights here.

68.    Plaintiff's child has also been harmed by receiving conflicting moral messages from his parents on the one hand and school authorities on the other, creating confusion about family values during a critical developmental period.

69.    The violations described herein were not isolated incidents but rather resulted from official policies, customs, and practices of the District and School, including: a) a policy or custom of denying religiously-based opt-out requests; b) a policy or custom of refusing to provide curriculum materials to parents in advance; c) a policy or custom of requiring parents to identify the specific lessons or materials to which they object without providing the information necessary to make such objections; d) a policy or custom of refusing to honor requests to opt out from a category of objectionable materials, specifically including materials that promote or normalize LGBTQ identities or lifestyles; e) inadequate training of officials regarding parental constitutional rights; and f) deliberate indifference to known constitutional violations.

70.    Defendants' actions, unless restrained, will continue to deprive Plaintiff and similarly situated parents of their rights to religious liberty, parental authority, and due process guaranteed by the First and Fourteenth Amendments and provisions of the Massachusetts Constitution.

71.    These violations are ongoing and will continue absent injunctive relief. J.L. remains enrolled in the District and will continue to be exposed to curriculum that violates Plaintiff's

religious beliefs, including additional Social Studies lessons and potentially other lessons Defendants have not yet disclosed.

72.     Absent the ability to opt his child out of the objectionable instruction, Plaintiff may be forced to remove his child from class entirely, which risks his child's failure to satisfy the State's mandatory instructional hour requirements and would further impose substantial burdens on Plaintiff, including the need to take time off work or secure alternative childcare.

73.     Plaintiff may be forced to seek alternative educational opportunities for his minor child as he continues to face the same administrative obstacles that prevented him from protecting his child's religious upbringing in September 2025. Defendants have not changed their policies or practices, and there is no reason to believe they will honor future opt-out requests. Plaintiff faces imminent and ongoing irreparable harm.

## V.    CAUSES OF ACTION

### COUNT I

**Violation of Plaintiff's First Amendment Right to Free Exercise of Religion**
(U.S. Const. amend. I; 42 U.S.C. § 1983)
(Claim Against All Defendants)

73.     Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

74.     Pursuant to 42 U.S.C. § 1983, Plaintiff brings this claim against Defendants for acting under color of state law to deprive him of his right to the free exercise of religion as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

75.     Insofar as this claim seeks damages, it is brought against Defendants in their individual capacities. Insofar as it seeks injunctive relief, it is brought against them in their official capacities.

76.    Plaintiff's sincerely held religious beliefs require that he direct the moral and spiritual education of his child in accordance with his Christian faith.

77.    Defendants' refusal to honor Plaintiff's written opt-out requests, and their subsequent requirement that his minor child participate in lessons promoting moral and ideological values contrary to those beliefs, constitute a substantial burden on the free exercise of Plaintiff's religion.

78.    Defendants further burdened Plaintiff's religious exercise by withholding access to curriculum materials, thereby obstructing his ability to identify and opt out of objectionable content in advance.

79.    The substantial burden imposed on Plaintiff's religious exercise includes:

1.    Compelling his five-year-old child to receive moral instruction directly contrary to the family's Biblical faith during school hours under the authority of the state;

2.    Undermining Plaintiff's religious teaching by presenting conflicting moral messages from trusted authority figures (teachers) at a critical stage of the child's moral development;

3.    Forcing Plaintiff to choose between allowing his child to receive religious instruction he finds objectionable or removing his child from public school entirely;

4.    Requiring Plaintiff to engage in remedial religious instruction to counteract the state's conflicting moral messaging;

5.  Forcing Plaintiff to discuss sensitive issues regarding sexuality and marriage with his five-year-old child much earlier than he ever wanted to or believed was appropriate; and

6.  Causing Plaintiff ongoing anxiety, loss of trust, and concern about future violations.

80.  This burden is substantial because:

1.  it compelled Plaintiff's child to receive moral instruction directly contrary to the family's faith during school hours under the authority of the state;

2.  it undermined Plaintiff's religious teaching by presenting conflicting moral messages from a trusted authority figure (the teacher);

3.  it forced Plaintiff to choose between allowing his child to receive religious instruction he finds objectionable or removing his child from public school entirely; and

4.  it required Plaintiff to engage in remedial religious instruction to counteract the state's conflicting moral messaging.

81.  It is clearly established that government officials may not compel individuals to act in a manner that violates their sincerely held religious beliefs, nor may they penalize those who seek to exercise such rights.

82.  Defendants' actions, both individually and collectively, were neither neutral nor generally applicable but were motivated by hostility toward Plaintiff's religious beliefs, as evidenced by:

1.  Defendant So's August 28, 2025 email rejecting Plaintiff's requests as not based on "sincere religious beliefs"—improperly questioning the sincerity of his faith;

2.  Characterizing clear, religiously-based opt-out requests as insufficiently "specific" while refusing to provide the information necessary to be more specific;

3.  Proceeding with objectionable instruction immediately after receiving a detailed opt-out letter from counsel, suggesting deliberate defiance;

4.  Withholding access to curriculum units titled "Families are Special" and "We're All Different and Special"—the units most obviously implicating Plaintiff's religious objections;

5.  Violating the public records law deadline to keep Plaintiff uninformed; and

6.  Creating impossible administrative hurdles uniquely burdensome to parents with religious objections.

83.  Defendants' actions were neither neutral nor generally applicable in that they allow some students to opt out of materials for secular reasons but did not allow Plaintiff to opt J.L. out of materials for religious reasons.

84.  Defendants' conduct is not justified by any compelling governmental interest and is not narrowly tailored to achieve any legitimate purpose.

85.  As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff has suffered injury, including emotional distress, loss of parental trust, and deprivation of fundamental rights protected by the First Amendment.

<u>**COUNT II**</u>

**Violation of Plaintiff's Fourteenth Amendment Right to Substantive Due Process**
(U.S. Const. amend. XIV; 42 U.S.C. § 1983)
(Claim Against All Defendants)

86.    Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

87.    Pursuant to 42 U.S.C. § 1983, Plaintiff brings this claim against Defendants for acting under color of state law to deprive him of his right to direct the upbringing and education of his child as protected by the Fourteenth Amendment.

88.    The Supreme Court has long recognized that parents have a fundamental liberty interest "to direct the upbringing and education of children under their control." *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925).

89.    Defendants' decision to disregard Plaintiff's religiously based opt-out request and compel his child's participation in instruction contrary to his faith violated that fundamental right.

90.    Defendants' refusal to respect Plaintiff's religiously based opt-out request directly infringed on his liberty interest in the moral and spiritual formation of his minor child.

91.    The District's actions reflect an arbitrary exercise of government authority that substitutes the State's moral judgment for that of the parent in violation of the substantive guarantees of the Fourteenth Amendment's Due Process Clause.

92.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered irreparable injury to his rights as a parent, including loss of control over his child's education and exposure of his child to content contrary to the family's deeply held beliefs.

## COUNT III

**Violation of Plaintiff's Fourteenth Amendment Right to Procedural Due Process**
(U.S. Const. amend. XIV; 42 U.S.C. § 1983)
(Claim Against All Defendants)

93.    Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

94.    Plaintiff possesses a liberty interest in the care, custody, and control of his child, which includes the right to make informed decisions concerning his child's education and moral upbringing.

95.    Defendants deprived Plaintiff of that liberty interest without due process of law by:

1. Failing to provide advance notice of classroom instruction addressing sensitive moral or social topics;

2. Refusing to disclose requested curriculum materials in a timely or meaningful fashion; and

3. Compelling the child's participation in objectionable instruction before allowing Plaintiff the opportunity to object or seek accommodation.

96.    The Due Process Clause requires that individuals be provided with notice and a meaningful opportunity to be heard before the government infringes upon a protected liberty interest.

97.    Defendants' policies and actions deprived Plaintiff of those safeguards, resulting in the unlawful infringement of his rights.

98.    Defendants' conduct was intentional, arbitrary, and in reckless disregard of Plaintiff's constitutional rights.

18

99.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered injury, including emotional harm, loss of trust in public educational institutions, and deprivation of his constitutional right to procedural due process.

## COUNT IV

**Violation of Plaintiff's Right to Free Exercise of Religion**
(Mass. Const. Amend. Art. 46, § 1)
(Claim Against All Defendants)

100.    Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

101.    Article 46, § 1 of the Amendments to the Massachusetts Constitution provides that "no law shall be passed prohibiting the free exercise of religion."

102.    This provision affords broader protection for religious liberty than its federal counterpart, safeguarding individuals and families from state action that burdens religious exercise, whether directly or indirectly.

103.    Defendants' conduct, as described above, compelled Plaintiff's minor child to participate in classroom instruction that contradicted the family's sincerely held religious beliefs, thereby substantially burdening Plaintiff's free exercise of religion.

104.    Defendants further violated Article 46 by denying Plaintiff's requests for accommodation and by refusing to provide the curriculum information necessary for him to make informed religious and moral decisions.

105.    Defendants' actions were neither neutral nor generally applicable, and they were motivated, at least in part, by animus toward or disregard for religiously based parental objections.

106.    No compelling state interest justifies Defendants' interference with Plaintiff's right to the free exercise of religion, and their actions were not narrowly tailored to serve any legitimate government objective.

107.    As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff has suffered harm, including emotional distress, violation of his religious liberty, and infringement of rights protected under the Massachusetts Constitution.

## COUNT V

**Violation of Plaintiff's Right to Direct the Upbringing
and Religious Education of His Child**
(Mass. Decl. of Rights art. 12)
(Claim Against All Defendants)

108.    Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

109.    Article 12 of the Massachusetts Declaration of Rights provides that no person shall be deprived of liberty "but by the judgment of his peers, or the law of the land." This article has been interpreted to protect fundamental parental rights and family integrity.

110.    The Supreme Judicial Court has made clear that the Massachusetts Constitution provides even greater protection for parental rights than the United States Constitution. See *Care and Protection of Eve*, 490 Mass. 394, 406 (2025) (recognizing the right of parents to direct their children's upbringing and religious formation as fundamental under Massachusetts law).

111.    Plaintiff's parental rights include the freedom to ensure that his child's education and moral instruction conform to his family's religious beliefs and values.

112.    Defendants violated those rights by requiring Plaintiff's child to participate in classroom instruction that contravened his faith and by denying him access to the information necessary to exercise his right to opt out.

113. Defendants' actions intrude upon the private sphere of family life and substitute the State's judgment for that of the parent on matters of moral and religious significance.

114. Defendants' conduct was intentional, arbitrary, and undertaken with reckless disregard for the constitutional protections afforded to parents under Massachusetts law.

115. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered injury, including loss of parental control, emotional distress, and violation of rights protected by Article 12 of the Massachusetts Declaration of Rights.

<u>**COUNT VI**</u>

**Violation of The Massachusetts Civil Rights Act**
(M.G.L. c. 12, § 11I)
(Claim Against Defendants Hackett, Martinez, and So)

116. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

117. M.G.L. c. 12, § 11I, also known as the Massachusetts Civil Rights Act, allows individuals to sue other individuals and corporations, whether or not acting under color of state law, who by threats, intimidation, or coercion violate their state or federal civil rights.

118. As stated in the foregoing Counts, Defendants violated Plaintiff's state and federal constitutional rights to free exercise of religion, parental authority, and procedural due process by failing to provide him with notice and an opportunity to opt out of curricular content in his son's classes that undermined his family's religious beliefs.

119. Despite Plaintiff's clear and reasonable requests, Defendants forced Plaintiff's son to sit through at least two class sessions where books were read to him that normalized and promoted LGBTQ relationships, in direct contravention of his religious beliefs.

120.    In doing so, Defendants used coercive power to violate Plaintiff's rights and the rights of J.L.

121.    This constituted a violation of M.G.L. c. 12, § 11I against both Plaintiff and J.L.

122.    As a direct and proximate result of Defendants' conduct, Plaintiff and J.L. have suffered injuries, including loss of parental control, emotional distress, and violation of fundamental rights as outlined above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

A.    A declaratory judgment pursuant to 28 U.S.C. § 2201 and M.G.L. c. 231A, § 1 that Defendants, acting under color of state law, have violated Plaintiff's rights to the free exercise of religion and to the care, custody, and control of his child, as guaranteed by the First and Fourteenth Amendments to the United States Constitution and by Articles 12 and 46 of the Massachusetts Constitution;

B.    Injunctive relief, including enjoining Defendants, their agents, employees, successors, and all persons acting in concert with them from:

1.    Compelling the participation of Plaintiff's child in classroom instruction that conflicts with the family's sincerely held religious beliefs without prior notice and opportunity to opt out;

2.    Refusing to provide timely access to instructional materials upon parental request; and

3.    Otherwise interfering with or retaliating against Plaintiff for exercising his constitutionally protected rights as a parent of faith;

22

    C.   An award of compensatory damages, or in the alternative nominal damages, for the violation of Plaintiff's constitutional rights, including but not limited to the loss of parental autonomy, any costs associated with alternative educational opportunities, and the chilling of religious liberty;

    D.   An award of reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and any other applicable authority; and

    E.   Such further relief as this Court deems just and proper to secure the full enjoyment of Plaintiff's federal and state constitutional rights.

**JURY DEMAND**

    Plaintiff demands trial by jury on all claims and issues so triable.

DATED: October 17, 2025.

                        Respectfully submitted,

                        SAMUEL J. WHITING
                        */s/ Samuel J. Whiting*
                        MASSACHUSETTS LIBERTY LEGAL CENTER
                        (Massachusetts Bar No. 711930)
                        sam@mafamily.org

                        JORDAN SEKULOW*
                        (D.C. Bar No. 991680)
                        STUART J. ROTH*
                        (D.C. Bar No. 475937)
                        ANDREW EKONOMOU*
                        (GA Bar No. 242750)
                        BENJAMIN P. SISNEY*
                        (D.C. Bar No. 1044721)
                        OLIVIA F. SUMMERS*
                        (D.C. Bar No. 1017339)
                        NATHAN MOELKER*
                        (VA Bar No. 98313)

THE AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Avenue, NE
Washington, D.C. 20002
Telephone: (202) 546-8890
Facsimile: (202) 546-9309

ABIGAIL SOUTHERLAND*
 (TN Bar No. 026608)
THE AMERICAN CENTER FOR LAW & JUSTICE
625 Bakers Bridge Ave., Suite 105-121
Franklin, Tennessee 37067
Tel. 615-599-5572
Fax: 615-599-5180

* Not licensed in this court, PHV motions forthcoming.