UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ALAN L., on behalf of himself and his minor child, J.L., | ) ) ) ) |  |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) | 25-13047-FDS |
| LEXINGTON PUBLIC SCHOOLS, et al., | ) ) ) |  |
| Defendants. | ) ) |  |

**MEMORANDUM AND ORDER ON DEFENDANT'S NOTICE TO
COURT REGARDING FURTHER CONTESTED MATERIALS AND
REQUEST FOR CLARIFICATION**

**SAYLOR, J.**

This case concerns a parent's constitutional right to opt his child out of certain classroom materials and lessons on the ground that they conflict with his religious beliefs. According to the complaint, plaintiff Alan L. is a "devout Christian" whose religious beliefs include traditional views on sexual orientation and gender identity. He has a five-year-old son, J.L., who is currently enrolled in kindergarten at the Joseph Estabrook Elementary School in Lexington, Massachusetts.

Plaintiff objects to the content of certain books concerning sexual orientation and gender identity that are included in the kindergarten curriculum being used to teach J.L.

On December 30, 2025, this Court concluded, based on the Supreme Court's recent decision in *Mahmoud v. Taylor*, 145 S. Ct. 2332 (2025), that plaintiff was likely to succeed on the merits of his claim that he had a constitutional right to direct the educational and religious upbringing of his child, and that, in order to protect that right, he had the right to opt his child out

of exposure to certain classroom materials that include teachings that run counter to those of his religion. The Court issued a preliminary injunction that ordered plaintiff to identify all curriculum materials that he contended would burden his free-exercise rights so that defendants could either opt J.L. out of viewing those materials or bring the matter to the Court's attention if they believed that the materials could not amount to a burden on plaintiff's free-exercise rights.

Defendants have now raised a dispute as to two books that are part of the kindergarten curriculum. For the reasons that follow, the Court agrees with defendants that the identified books do not fall within the scope of the preliminary injunction.

I.     **Procedural Background**

On February 2, 2026, defendants filed a notice with the court concerning a dispute between the parties as to whether two books identified by plaintiff in fact fell within the terms of the preliminary injunction. (Dkt. No. 48). Defendants contend that the books are outside the scope of the injunction because they relate only to gender stereotypes, not issues of gender identity or other matters related to "LGBTQ+ characters, relationships, or activities." (*Id.* at 1-3).

Plaintiff filed a response on February 4, 2026, contending that the books did fall within the injunction's scope because they did in fact address issues of gender identity. (Dkt. No. 50).

II.    **Contested Materials**

The parties have raised a dispute regarding two books that are included in the kindergarten curriculum: *Pink Is For Boys* by Robb Pearlman and *Except When They Don't* by Laura Gehl.

*Pink Is For Boys* features a series of pages which state that a given color—"pink," "blue," "yellow," "green," "red," "purple," "brown," "black," and "white"—"is for girls. And

boys." or "is for boys.  And girls," followed by an image of a girl and boy taking part in the same activity—playing baseball, running in a forest, and setting up a popsicle stand, among others.[1]

*Except When They Don't* features illustrations and descriptions of young boys and girls taking part in stereotypically gender-appropriate activities, such as "Boys play monster trucks with glee.  Girls bake cakes and serve hot tea.  Girls like pom-poms, pink, and jewels.  Boys like fighting pirate duels."  Then, after listing several similar activities, there is a page that reads, "Except when they don't," accompanied by an illustration of a boy or girl doing what is stereotypically considered the opposite gender's preferred activity.  The book features illustrations of, among other things, a boy in a superhero cape having a tea party with a stuffed animal; a boy in a football helmet and jersey wearing pom-poms and cheering on two girls playing football; a young boy dancing in flowered tights; a man dressed as a chef wearing a pink baker's smock; and what appears to be a male ballet dancer wearing pink ballet shoes.  The book's closing message is "Everywhere from near to far . . . be exactly who you are."

### III.   Analysis

The issue presented is whether the two books implicate plaintiff's religious beliefs, as he has defined them in this litigation.

The complaint in this matter alleges that plaintiff "is a practicing Christian whose sincerely held religious beliefs require that he, not the State, direct the moral and spiritual formation of his child." (Compl. ¶ 28).  It further alleges that he "holds to a biblical view of marriage, gender, and sexuality," that he and his family "believe that God created people in His image either male or female (*see* Gen. 1:27) and that human sexuality is a gift to be expressed

---

[1] While neither party submitted images from the books at issue, defendants provided links to YouTube videos that feature what appear to be genuine reproductions of all pages of the relevant books.  The Court bases its findings on those videos, which neither party has suggested do not accurately reflect the contents of the books at issue.

only within the context of a one-man, one-woman marriage (*see* Matt. 19:5)." (Compl. ¶ 29). It alleges that he and his family "also believe that God created all people, regardless of skin color, in His image and that children should be taught to judge others by the content of their character rather than the color of their skin (*see* Acts 10:34-35)." (Compl. ¶ 30).

Finally, it alleges that he "believes that it is his role as a parent to instill good values into his child, such as respect, kindness, and empathy, and to shape his child's concept of the world and of different identities, exclusively form a Christian worldview (*see* Prov. 22:6)." (Compl. ¶ 31).

The complaint thus raises issues of "marriage, gender, and sexuality," not gender stereotyping—such as, for example, whether it is appropriate for girls to enjoy playing sports or for boys to enjoy cooking. Plaintiff's filings in connection with the preliminary injunction likewise focused on issues of gender identity, sexuality, and gay rights, including gay marriage, not gender stereotyping. And the preliminary injunction this Court issued—which plaintiff has not moved to modify—applies to classroom materials "that depict or describe LGBTQ+ characters, relationships, or activities, or LGBTQ+ political or social advocacy," not to materials that address gender stereotypes. (Am. Prelim. Inj. 2, Dkt. No 39). Again, the books in dispute must be evaluated in light of plaintiff's religious beliefs as he has framed them.

The first disputed book is *Pink Is For Boys*. Nothing in that book's text or illustrations implicates the religious beliefs that plaintiff identified. It addresses only issues regarding stereotypes associating certain activities with boys and certain activities with girls. Those issues are distinct from the issues of gender identity plaintiff has identified as objectionable. Plaintiff's description of his religious beliefs did not include, for example, what colors are appropriate for boys and girls.

4

Plaintiff's argument that the book falls within the terms of the preliminary injunction rests on speculation about how the book will be taught or about materials that may be presented alongside the book. He posits that the "context" in which the book appears in the curriculum "makes clear that" a lesson employing the book "is likely to include LGBTQ+ instruction," in part because the book appears in a curriculum document as an option to be taught in a lesson on "Gender Expression." (Pl.'s Resp. 2, Dkt. No. 50). But defendants represent that the book will be taught to J.L.'s class as part of an entirely different lesson about "stereotypes" that does not feature any discussion on issues of gender identity. (Defs.' Notice 2, Dkt. No. 48). Plaintiff also makes an argument based on language on the YouTube page featuring the read-along of the book and the book's inclusion in a textbook's list of "LGBTQ+ inclusive children's books." But how others have characterized the book is not relevant to whether the book itself, and the manner in which these defendants intend to present it, implicates plaintiff's free-exercise rights. The Court therefore concludes that *Pink Is For Boys* does not violate plaintiff's religious beliefs, as framed in the complaint, and therefore does not fall within the scope of the preliminary injunction.

The second book is *Except When They Don't*. Although perhaps a closer call, that book likewise does not appear to implicate the religious beliefs that plaintiff identified in his complaint. Again, the book is addressed to gender stereotypes, not gender identity, as shown by a representative passage: "Girls and boys like lots of things: Play-Doh, puzzles, queens and kings, dressing up and making forts, playing house and playing sports."

Plaintiff again relies to some degree on speculation concerning how the book will be taught to support his argument that it violates his beliefs. He points to the "author's published teacher's guide" for the book, which apparently includes questions that plaintiff argues relate to

issues of gender identity.  (Pl.'s Resp. 4).  But there is no evidence that this particular teaching guide or the questions contained therein will be taught in J.L.'s classroom.

Plaintiff also contends that the book features "crossdressing" when it depicts, for example, a male figure in a pink baker's smock or a boy dancing in tights.  (*Id.* at 3-4).  It is certainly true that clothing choices are more likely to be related to gender identity than colors or toys.  But there is a substantial difference between the depictions in this book—of characters wearing an article of clothing not aligned with gender stereotypes—and those in, for example, *Lovely*, which featured depictions of men wearing women's clothing (such as a dress or high heels) in a sexualized context and as part of a larger story about issues of gender identity and sexual orientation.  Again, because the book teaches about gender stereotypes, not gender identity, it does not violate plaintiff's religious faith, as defined in the complaint, and therefore falls outside the scope of the preliminary injunction.

### IV.     Definition of LGBTQ+

In addition to the issue concerning the two identified books, defendants have requested that the Court provide a definition of the term "LGBTQ+," as used in the preliminary injunction, in order to clarify that injunction and help provide guidance to the parties.

For purposes of interpreting the preliminary injunction, the following terms should be interpreted according to their definitions as reflected in commonly used reference materials.  The term "LGBTQ+" means relating to people who "[are of] a sexual orientation that is non-heterosexual, including lesbians, gay men, bisexual people, and asexual people; people who are transgender or non-binary; people who are intersex; and queer people."  *LGBTQ People*, Wikipedia, https://perma.cc/8Y2P-9TKS (citation modified).  "Transgender" means "of, relating to, or being a person whose gender identity differs from the sex the person was identified as

having at birth." *Transgender*, Merriam-Webster, https://perma.cc/YU7Y-X8KH.  "Non-binary" means "relating to or being a person who identifies with or expresses a gender identity that is neither entirely male nor entirely female." *Nonbinary*, Merriam-Webster, https://perma.cc/V7H9-WGGS.  "Gender identity" means "a person's internal sense of being male, female, some combination of male and female, or neither male nor female." *Gender Identity*, Merriam-Webster, https://perma.cc/Q4YQ-J5U8.  And "queer" means "of, relating to, or being a person whose sexual orientation is not heterosexual and/or whose gender identity is not cisgender." *Queer*, Merriam-Webster, https://perma.cc/Q8ML-B3YL.

## V.      Conclusion

Accordingly, and for the forgoing reasons, and based on the record evidence, defendants are not required to provide an opportunity for plaintiff to opt his child out of classroom instruction using the books *Pink Is For Boys* by Robb Pearlman and *Except When They Don't* by Laura Gehl.  The term "LGBTQ+" shall be defined for purposes of the preliminary injunction as provided in this memorandum and order.  The Court will issue a second amended preliminary injunction that includes these definitions.

**So Ordered.**


Dated:  February 10, 2026

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge