UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:25-cv-13047-FDS

ALAN L., on behalf of himself and his minor
Child, J.L.,
    Plaintiff,

v.

LEXINGTON PUBLIC SCHOOLS; LEXINGTON
SCHOOL COMMITTEE; DR. JULIE HACKETT, in
individual and official capacity as Superintendent of
the Lexington Public School District; DR. GERARDO
J. MARTINEZ, in his individual and official capacity
as Principal of Joseph Estabrook Elementary School and;
ANDREA SO, in her individual and official
Capacity as Director of Elementary Education,
        Defendants.

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

NOW COME the defendants, Lexington Public Schools ("LPS"), Lexington School Committee,[1] Dr. Julie Hackett ("Hackett"), Dr. Gerardo Martinez ("Martinez") and Andrea So ("So"),[2] pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and submit this reply in response to Plaintiff's Opposition to Defendants' Motion to Dismiss. (Dkt. No. 49).

### I. PLAINTIFF INCORRECTLY DISREGARDS THE "FOUR-CORNERS" RULE

Plaintiff's opposition ignores the well-established "four corners" rule. *Young v. Lepone*, 305 F.3d 1, 10-11 (1st Cir. 2002) (in deciding a Rule 12(b)(6) motion, a court is ordinarily limited to "the allegations contained within the four corners of the plaintiff's complaint"); (Dkt. No. 49, p. 2 (Plaintiff referring, in lieu of a statement of facts, to the Court's summary of facts contained in its

---

[1] LPS and the Lexington School Committee are the same legal entity; therefore, Defendants refer to these defendants collectively herein as, "LPS."
[2] Collectively referred to herein as "Defendants."

ruling on the preliminary injunction motion)).  While the Court may have made certain findings at the preliminary injunction stage, "the prevailing standard" is that, with narrow exception, "any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden…."  *Rocket Learning, Inc. v. Rivera-Sanchez*, 851 F. Supp. 2d 384, 391 (D.P.R. 2012) (excluding preliminary injunction record from consideration at motion-to-dismiss stage), *citing Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).  Even were this not the case, however, the Court's general ruling as to the totality of the books at issue in Plaintiff's Motion for Preliminary Injunction did not make any findings specific to the two books associated with Plaintiff's Complaint, "Families, Families, Families!"  and "All Are Welcome."  Thus, Plaintiff's arguments incorporating facts not contained in the Complaint should be disregarded.

## II.     PLAINTIFF MISCONSTRUES DEFENDANTS' ARGUMENTS ON THE ISSUE OF STANDING

The Court's analysis in its decision on the motion for preliminary injunction was clear; however, Defendants raise again the absence of any compulsory component that was part and parcel of the ruling in *Mahmoud v. Taylor*.  606 U.S. 522 (2025).  Without the necessary compulsion, the principles of *Mahmoud* and *Yoder* do not exist.  *See, e.g., Mahmoud*, 606 U.S. at 557 (public school "imposes rules and standards of conduct on its students and holds a limited power to discipline them for misconduct").  It is therefore in the *absence* of *Mahmoud* that Defendants seek the same result as the First Circuit reached in *Parker v. Hurley,* given that the *Mahmoud* court skipped over the neutrally-or-generally-applicable question solely because of the compulsory nature of the Maryland plaintiffs' education.  *See Mahmoud v. Taylor*, 606 U.S. at 564, citing *Smith*, 494 U. S., at 878-879, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (requiring "same character" burden as in *Yoder* based on "compulsory-attendance requirement").  By applying the *Smith* analysis to those students who choose—rather than are forced—to attend Ms. Chestna's general-education kindergarten class, Plaintiff's constitutional rights are protected to the extent they must be in the absence of the

compulsory environment in *Mahmoud*, J.L.'s exposure to the two books at issue amounts to a mere incidental burden on Plaintiff's and J.L.'s rights, and their rights could not be burdened so as to require him to forgo a public benefit.

### III. PLAINTIFF'S CONCLUSORY ALLEGATIONS FAIL TO PLAUSIBLY SUGGEST ANY MUNICIPAL CUSTOM OR POLICY WAS THE "MOVING FORCE"

Plaintiff first asks this Court to find that his conclusory allegations with respect to the issue of whether a municipal custom or policy existed suffice to implicate the municipal entities. (Dkt. No. 49, p. 5; Compl. ¶ 69). They do not. *Gianfrancesco v. Town of Wrentham,* 712 F.3d 634, 639 (1st Cir. 2013), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("An 'unadorned, the-defendant-unlawfully-harmed-me accusation' will not do."). In this regard, Plaintiff's Complaint fits the *Iqbal* definition of a pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. at 662; (Compl. at ¶ 69).

Next, Plaintiff asks the Court to divine—again from evidence that cannot be considered at the motion-to-dismiss stage—from a single-line policy referencing the existence of a policy that permits opt-outs related to curriculum content, that the District requires parents to specify materials, limits parents to requesting information regarding available accommodations, and places the burden of identifying objectionable materials squarely on the parents in a way that would violate Plaintiff's rights. (Dkt. No. 49, pp. 6-7). Plaintiff's Complaint alleges no such policy.

Plaintiff's arguments that Defendants have "[a]dmitted" the existence of a policy should also be unpersuasive. (Id., p. 7). Plaintiff again relies on evidence unavailable at the motion-to-dismiss stage when he claims, erroneously, that the District's offer to opt Plaintiff out of five books amounts to a municipal policy. (Id., p. 8). Successful *Monell* arguments are not, as Plaintiff claims, limited to "rogue actor cases" where an individual acts in "conflict" with his municipality. (Id., p. 8). Instead, Plaintiff must plead allegations that plausibly suggest it was the municipal policy, itself, that effected

the constitutional violation. *City of Canton v. Harris,* 489 U.S. 378, 380 (1989), *quoting Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978) ("a city is not liable under § 1983 unless a municipal 'policy' or 'custom' is the moving force behind the constitutional violation"). Finally, So's statement describing that an opt-out request may be denied or returned *for clarification* falls far short of any policy denying notice of the curriculum or opt-outs. Inherent in *Mahmoud* is the principle that some opt-out requests may be denied. After all, if a plaintiff were to seek to be opted out of *all* public school curriculum, denying or returning the request for further clarification could not reasonably be viewed as a violation of his constitutional rights. Plaintiff's opposition also fails to point to any allegation suggesting LPS previously denied opt-outs or access to the curriculum.

### IV. PLAINTIFF'S ALLEGATIONS FAIL TO PLAUSIBLY SUGGEST HE WAS DENIED NOTICE OR OPT-OUT IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS, OR THAT HE IS ENTITLED TO INJUNCTIVE RELIEF

A careful review of the allegations reveals Defendants had no way of knowing Plaintiff's requests for curricular materials or his requests to be opted out of all DEI and Health curriculum were religious in nature until August 30, when he first conveyed any specifics regarding his religious beliefs. Moreover, nothing in *Mahmoud* suggests that adequate notice of the curriculum is not provided when a parent is invited to ask questions and come in to review the curriculum materials. That Plaintiff, by his own allegations, chose not to tie his requests to religious reasons, and did not avail himself of the opportunity to review the curriculum, cannot plausibly suggest facts that give rise to the claimed constitutional violations.

Additionally, Plaintiff fails to allege any facts plausibly suggesting Defendants would deny a religious-based request for curricular materials. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 678. Where the Complaint clearly establishes Plaintiff was provided with an opportunity to review the curriculum,

and that Defendants sought clarification of his opt-out requests before Plaintiff notified them of any sincerely held religious belief, he has not plausibly suggested entitlement to relief. While *Mahmoud* does not address the requirements for what constitutes a reasonable response to curriculum requests, it cannot be said that So's thoughtful response within three business days of Plaintiff's August 30 request—finally tied to his beliefs—amounts to anything less than reasonable as a matter of law. 606 U.S. at 569 (merely requiring the school board to "notify them in advance"). It would be implausible to suggest that within three days, Defendants were required to review and ascertain Plaintiff's religious objections, gather and review all curricular materials, and provide advance notice to Plaintiff; and, it would be similarly implausible to infer Plaintiff did not understand or receive—or have an obligation to respond to—So's invitation to review the curriculum.

### V. PLAINTIFF LACKS AUTHORITY FOR HIS POSITION THAT DEFENDANTS' ACTIONS WERE LEGISLATIVE, AS OPPOSED TO EXECUTIVE, IN NATURE, FOR PURPOSES OF HIS SUBSTANTIVE DUE PROCESS CLAIM

Plaintiff states without authority that Defendants' conduct was legislative, as opposed to executive, in nature. Actions that involve the application or implementation of existing policies to specific individuals or situations are executive in nature. *See, e.g., Board of Educ. v. Williams*, 403 P.2d 324, 330 (Ariz. Ct. App. 1965); *Kentner v. City of Sanibel*, 750 F.3d 1274, 1280 (11th Cir. 2014) (executive acts typically arise from ministerial or administrative activities and characteristically apply to a limited number of people, whereas legislative acts involve policy-making rather than mere administrative application of existing policies). Here, there is no suggestion any policy existed that curriculum materials should not be provided upon parental request, or that opt-outs should not be permitted for religious reasons. *Cf. Foote v. Ludlow Sch. Comm.*, 128 F.4th 336, 347 (1st Cir. 2025) (finding school policy requiring staff to use students' preferred pronouns and names without notifying parents to "fit[s] into the legislative bucket"). Plaintiff claims he requested curriculum materials and was not provided with all of them, and that So asked him for greater specificity in

response to his opt-out requests and offered him the opportunity to review the curriculum. To the extent these actions were taken, there is no suggestion of any legislative act adopting a policy that partial curriculum materials be provided using non-working hyperlinks, any policy outlining approved procedures for navigating vague opt-out requests not tied to religious beliefs, or any policy of approved procedures to be taken by LPS administrators who invite a parent to review the curriculum and are met with silence. If anything, Plaintiff's allegations are plausibly suggestive of executive conduct, to which the shocks-the-conscience test should be applied. *See, e.g., Harron v. Town of Franklin*, 660 F.3d 531, 536 (1st Cir. 2011) (applying shocks-the-conscience standard in substantive due process cases challenging individual actions by particular government officials).

### VI. PLAINTIFF ATTEMPTS TO IMPUTE MUNICIAL LIABILITY TO DEFENDANTS UNDER MCRA

Plaintiff incongruously argues the individual defendants were applying district policies to Plaintiff while simultaneously exerting moral coercion. Moreover, Plaintiff's allegations do not plausibly suggest any coercive intent or history of, or desire to, obstruct free exercise or due process. Plaintiff does not allege Hackett, Martinez or So were familiar with the content of either of the two books at issue, or when they might be presented; nor does he allege any awareness, on their part, that he did not receive all the curricular content he had requested from J.L.'s teachers and through the Town portal. Here, there is no suggestion of any disregard for state law, attempt to punish, or "concerted harassment and retaliation amounting to prohibited intimidation" as was present in *Howcroft v. Peabody.* 51 Mass. App. Ct. 573, 594 (2001). Nor were there any accusations, acts of aggression, or threats that are reminiscent of the facts in *Barron v. Kolenda. Cf.* 491 Mass. 408, 423 (2023) (defendant accused the plaintiff of slander, likened her to Hitler, abruptly ended a public meeting, threatened, and stood up, yelled and aggressively pointed at the plaintiff).

### VII. FOR PURPOSES OF QUALIFIED IMMUNITY, THE LAW WAS NOT CLEARLY ESTABLISHED AS TO TIMING, DEGREE OF NOTICE, ETC.

Plaintiff oversimplifies the issue of qualified immunity when he claims a reasonable official would have known refusing to provide requested curriculum to a parent, substituting their own judgment for that of a parent regarding what constitutes a burden on parents' religious beliefs, and refusing to accommodate sincerely held religious objections to curriculum materials would have violated Plaintiff's rights.  (Dkt. No. 49, p. 19).  *Mahmoud* presents entirely uncharted territory in terms of what level of notice is required, and when.  For instance, is merely the list of curricular materials sufficient, or must parents be provided with the precise lesson plans?  *Mahmoud* also does not address the circumstances in which a parent objects to materials that have yet to be identified, in which a parent makes initial requests that are later tied to religion (Plaintiff's statement that he and J.L. are Christian and attend church, e.g.); what knowledge, if any, is imputed to school officials who are unaware of curricular requests a parent has made; and what follow-up obligations might arise for school officials whose invitation to a parent to review curricular materials goes unanswered.

Respectfully submitted,

Defendants,
LEXINGTON PUBLIC SCHOOLS,
LEXINGTON SCHOOL COMMITTEE; DR.
JULIE HACKETT; DR. GERARDO J.
MARTINEZ and ANDREA SO,
By their attorneys:

*/s/ Alexandra M. Gill*
Douglas I. Louison (BBO# 545191)
dlouison@lccplaw.com
Alexandra 'Sasha' M. Gill (BBO# 663040)
sgill@lccplaw.com
Louison, Costello, Condon & Pfaff, LLP
Ten Post Office Square, Suite 1330
Boston, MA  02109
617-439-0305

**CERTIFICATE OF SERVICE**

      I hereby certify that this document, filed through ECF system on February 10, 2025, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this date. Email copies will be sent to those listed as non-participants on the ECF system.

                                            /s/ *Alexandra M. Gill*
                                            Alexandra 'Sasha' M. Gill