**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ALAN L., on behalf of himself and his minor child, J.L., <br><br> Plaintiff, <br><br> v. <br><br> LEXINGTON PUBLIC SCHOOLS, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No.
25-13047-FDS

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTION TO DISMISS**

**SAYLOR, J.**

This case concerns a parent's constitutional right to opt his child out of certain classroom materials and lessons on the ground that they conflict with his religious beliefs. According to the complaint, plaintiff Alan L. is a "devout Christian" whose religious beliefs include traditional views on sexual orientation and gender identity. He has a five-year-old son, J.L., who is currently enrolled in kindergarten at the Joseph Estabrook Elementary School in Lexington, Massachusetts.[1]

Plaintiff objects to the content of certain books concerning sexual orientation and gender identity that are included in the kindergarten curriculum being used to teach J.L. He contends that his child has been compelled "to participate in classroom instruction that promote[s] sexualized and ideological messages directly contrary to his family's faith." (Compl. ¶ 3, Dkt. No. 1). He further contends that he has the right to be notified before such materials are shown

---

[1] The Court previously granted plaintiff's motion to proceed by pseudonym. (Dkt. No. 33).

to J.L. and to opt his child out of lessons and other classroom activities involving those materials. Defendants are the Lexington Public Schools; the Lexington School Committee; the Superintendent of Lexington Public Schools; the Principal at Estabrook Elementary School; and the district's Director of Elementary Education.

In an earlier opinion, the Court issued a preliminary injunction after finding that plaintiff was likely to succeed on the merits of his free-exercise claim. *Alan L. v. Lexington Pub. Schs.*, 814 F. Supp. 3d 61, 76 (D. Mass. 2025). That preliminary injunction remains in force. Defendants have now moved to dismiss the complaint in its entirety. For the reasons that follow, the motion will be granted in part and denied in part.

## I.      **Background**

### A.      **Factual Background**

The factual background of the case is set out in detail in the Court's preliminary-injunction opinion. *See Lexington Pub. Schs.*, 814 F. Supp. 3d at 65-71. For the purpose of resolving the present motion, the Court recounts the essential allegations of the complaint below.

Plaintiff Alan L. is the father of J.L., a minor child attending kindergarten at Joseph Estabrook Elementary School in Lexington, Massachusetts. (Compl. ¶ 28). He is a "devout Christian whose sincerely held religious beliefs guide every aspect of his family life, including the upbringing and education of his child." (*Id.* ¶ 6). He "holds to a biblical view of marriage, gender, and sexuality"; "believe[s] that God created people in His image either male or female"; and believes "that human sexuality is a gift to be expressed only within the context of a one-man, one-woman marriage." (*Id.* ¶ 29).

Before the start of the 2025-26 academic year, plaintiff contacted school officials asking to review the curriculum for J.L's "Health and 'Diversity, Equity, and Inclusion'" classes. (*Id.*

¶ 32).  Following a meeting with J.L.'s teacher and another school official, he requested that J.L. be opted out of health class and "any DEI curriculum."  (*Id.* ¶¶ 34-35).

On August 28, 2025, Andrea So, Lexington's Director of Elementary Education, rejected plaintiff's opt-out requests.  (*Id.* ¶ 37).  She wrote that "a request for religious opt-out may be denied or returned for clarification if it does not clearly identify the specific *required* curriculum or instructional material at issue, or if it lacks sufficient detail to allow for meaningful review."  (*Id.*).  That same day, plaintiff replied and reiterated his opt-out request.  (*Id.* ¶ 39).  He also submitted a public-records request for curriculum information on August 29, 2025, which was not answered within 10 business days, as required by statute.  (*Id.* ¶¶ 40-41).

Plaintiff then submitted a subsequent opt-out request to Gerardo Martinez, principal of Estabrook Elementary School, on August 30, 2025.  (*Id.* ¶ 42; *id.*, Ex. A).  In particular, he requested that J.L. be opted out of "lessons, events, school assemblies or other instructional activities and programs which cover issues of sexual orientation or gender identity, pursuant to the U.S. Supreme Court's decision in Mahmoud v. Taylor.  Please also notify me in advance when such lessons, events, activities, etc. are scheduled."  (*Id.* ¶ 43; *id.*, Ex. A).

On September 5, 2025, So responded to plaintiff's renewed opt-out request.  (*Id.* ¶ 44, *id.*, Ex. B).  Once again, So wrote that plaintiff's opt-out request lacked "sufficient detail to allow for meaningful review."  (*Id.*).  Plaintiff's counsel then sent a letter to Martinez on September 10, 2025, further explaining the opt-out request.  (*Id.* ¶ 46; *id.*, Ex. C).

On September 19, 2025, plaintiff received an email from So with links to the health curriculum, from which he learned that J.L. had been shown the book "Families, Families, Families" in health class.  (*Id.* ¶¶ 47-48).  He contends that the themes of this book violated his religious beliefs to the extent that it showed that "all family arrangements are equally morally

acceptable." (*Id.* ¶ 50). J.L. was also later shown the book "All Are Welcome," which features "illustrations of gay and lesbian couples and their children." (*Id.* ¶ 55). Plaintiff was not informed of these lessons before they took place. (*Id.* ¶ 54).

### B.    **Procedural Background**

The complaint asserts six counts: a claim under 42 U.S.C. § 1983 for violation of plaintiff's First Amendment right to free exercise of religion (Count 1); a claim under § 1983 for violation of plaintiff's Fourteenth Amendment right to substantive due process (Count 2); a claim under § 1983 for violation of plaintiff's Fourteenth Amendment right to procedural due process (Count 3); a claim under Article 46 of the Massachusetts Constitution for violation of plaintiff's right to free exercise of religion (Count 4); a claim under Article 12 of the Massachusetts Declaration of Rights for violation of plaintiff's right to direct the upbringing and religious education of his child (Count 5); and a claim for violation of the Massachusetts Civil Rights Act (Count 6).

Defendants are the Lexington Public Schools; the Lexington Public School Committee; Julie Hackett, in her individual and official capacity as Superintendent of the Lexington Schools; Gerardo J. Martinez, in his individual and official capacity as Principal of Joseph Estabrook Elementary School; and Andrea So, in her individual and official capacity as Director of Elementary Education for the Lexington Schools.

The Court granted plaintiff's motion for a preliminary injunction on December 30, 2025. (Dkt. No. 39). The Court clarified and amended the preliminary injunction on February 10, 2026; that order remains in effect. (Dkt. No. 52).

Defendants have now moved to dismiss the complaint in its entirety. (Dkt. No. 44).

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), the complaint must state a claim that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  When determining whether a complaint satisfies that standard, a court must "take the complaint's well-pleaded facts as true, and . . . draw all reasonable inferences in the plaintiff's favor."  *Lowe v. Mills*, 68 F.4th 706, 713 (1st Cir. 2023) (quoting *Frese v. Formella*, 53 F.4th 1, 5 (1st Cir. 2022)) (citation modified).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## III.    Analysis

### A.    Lack of Article III Standing

Repeating an argument made in a slightly different posture at the preliminary-injunction stage, defendants argue that plaintiff has not suffered an injury-in-fact because "J.L.'s attendance [at kindergarten] is voluntary rather than mandated."  (Defs.' Mot. 6, Dkt. No. 45).  That contention clearly fails.  As the Court noted in its preliminary-injunction opinion, the Supreme Court has "repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits."  *Carson v. Makin*, 142 S. Ct. 1987,

1996 (2022).  And the *Mahmoud* Court itself explicitly stated that parents' ability to place their

children in private school or to home-school them was "no answer to the parents' First

Amendment objections" to the materials taught in the public schools.  *Mahmoud v. Taylor*, 145 S.

Ct. 2332, 2359 (2025).  Instead, the Court reiterated that "when the government chooses to

provide public benefits, it may not 'condition the availability of those benefits upon a recipient's

willingness to surrender his religiously impelled status.'" *Id.* (quoting *Trinity Lutheran Church v.*

*Comer*, 582 U.S. 449, 462 (2017)) (citation modified).  And because an injury based on

infringement of free-exercise rights is a "harm[] traditionally recognized as providing a basis for

lawsuits in American courts," defendants' argument that plaintiff lacks standing is unavailing.

*See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).

**B.**　　*Monell* **Liability**

Next, defendants contend that the complaint fails to allege the existence of a policy or

custom sufficient to support municipal liability under *Monell v. Department of Social Services*,

436 U.S. 658 (1978), and its progeny.

Municipalities cannot be held liable under 42 U.S.C. § 1983 for violations committed by

their employees on a theory of *respondeat superior*.  *See Monell*, 436 U.S. at 691.  Rather, a

municipality can only be liable under § 1983 when its officers' "execution of a government's

policy or custom . . . inflicts the injury and is the moving force behind the constitutional

violation." *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 25 (1st Cir. 2005) (quoting

*Monell*, 436 U.S. at 694) (internal quotations omitted).

Assessing liability against a municipality based on the conduct of its officials therefore

involves two elements:  first, the plaintiff's harm must have been caused by a constitutional

violation; and second, the municipality, through its "polic[ies] or custom[s]," must have been

responsible for that violation.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 120-23 (1992).

As discussed in more detail below, the complaint adequately alleges a violation of plaintiff's free-exercise rights.  Therefore, only the second element of the *Monell* framework needs to be addressed here.

"An official municipal policy can take the form of either an officially adopted policy statement or regulation, or an informal custom amounting to a widespread practice that, although not authorized by written law, is so permanent and well settled as to constitute a custom or usage with the force of law."  *Lavigne v. Great Salt Bay Cmty. Sch. Bd.*, 146 F.4th 115, 125 (1st Cir. 2025) (citation modified).  But the "bare assertion" that a municipality "implemented 'customs and policies' which caused the [plaintiff's] injuries" does not suffice.  *See Massó-Torrellas v. Municipality of Toa Alta*, 845 F.3d 461, 469 (1st Cir. 2017).  Instead, as always, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Here, the complaint adequately alleges the existence of a policy adopted by the defendants that was the "moving force" behind the infringement of plaintiff's constitutional rights.  *See Young*, 404 F.3d at 25.  The August 28, 2025 reply by So to plaintiff's opt-out request explicitly refers to a policy concerning opt-out requests, stating that "a request for religious opt-out may be denied or returned for clarification if it does not clearly identify the specific *required* curriculum or instructional material at issue, or if it lacks sufficient detail to allow for meaningful review."  (Compl. ¶ 37).  Her September 5 email again refers to the policy by stating that plaintiff's subsequent request still lacked "sufficient detail to allow for meaningful review."  (*Id.*

¶ 44). And the complaint alleges that plaintiff "had no way to comply with Ms. So's request for more specificity" because "the District had not produced specific information about the lessons and curricular materials they intended to use in Plaintiff's child's classes." (*Id.* ¶ 45). A clear inference from these allegations is that So was acting in accordance with a specific municipal policy, and that policy did not permit plaintiff to obtain sufficient information about the curriculum to submit a more specific opt-out request.

The complaint also specifically alleges the existence of "a policy or custom of denying religiously-based opt-out requests"; "a policy or custom of requiring parents to identify the specific lessons or materials to which they object without providing the information necessary to make such objections"; and "a policy or custom of refusing to honor requests to opt out from a category of objectionable materials, specifically including materials that promote or normalize LGBTQ identities or lifestyles." (*Id.* ¶ 69). Setting aside whether those allegations, standing alone, would be too conclusory to satisfy the pleading standard established by *Twombly* and *Iqbal*, when read together with the specific allegations concerning plaintiff's communications with So, they are certainly sufficient to allege the existence of a policy.

For those reasons, the complaint adequately states a claim against Lexington Public Schools and the School Committee under *Monell*.

### C.      Free-Exercise Claim

Next, defendants argue that the complaint fails to state a claim for violation of plaintiff's free-exercise rights. For the same reasons discussed in the preliminary-injunction opinion, the Court disagrees. *See Lexington Pub. Schs.*, 814 F. Supp. 3d at 71-76.

The only meaningful difference between this motion and the earlier one is that the complaint includes allegations concerning fewer books than were addressed during the preliminary-injunction proceeding. But the complaint clearly alleges that J.L. was shown

8

"Families, Families, Families" and "All Are Welcome"—indeed, it alleges that defendants "acknowledged" that J.L. had been shown "Families, Families, Families." (Compl. ¶¶ 48-49, 55, 57). And, as the Court discussed in its earlier opinion, "Families, Families, Families" "appear[s] to teach that any arrangement of people—of whatever sex—can be a family so long as they 'love each other'"—an almost identical message to one that the Supreme Court in *Mahmoud* found infringed on those plaintiffs' free-exercise rights. *See Lexington Pub. Schs.*, 814 F. Supp. 3d at 74.

Defendants separately contend that the claims against Martinez, Hackett, and So should be dismissed because the complaint does not include specific allegations as to each defendant. (Defs.' Mot. 8-9). But the complaint includes sufficient allegations, taken as true, to demonstrate that So and Martinez played a role in violating plaintiff's rights. (*See* Compl. ¶¶ 37-38, 44 (So); *id.* ¶¶ 11-12 (Hackett); *id.* ¶¶ 14-15, *id.* Ex. B, Ex. C (Martinez)). As to Hackett, who was the superintendent, the complaint includes no specific factual allegations beyond the fact that she exercised supervisory authority over those in the district. The cited paragraphs only describe her role and that she supervised employees. That is not sufficient, and therefore the claim against Hackett will be dismissed.

As a result, the motion will be denied as to plaintiff's free-exercise claim.

### D.      Due-Process Claims

#### 1.      Substantive Due Process

Defendants next contend that the substantive-due-process claim should be dismissed. The Court agrees because this issue is squarely controlled by binding First Circuit precedent.

In *Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008), the Court of Appeals considered a claim brought against the Lexington schools by parents who contended that exposing their children to books depicting homosexual couples violated both their free-exercise rights and their

substantive-due-process right to direct the upbringing of their children. *Id.* at 90. The court ruled against them, holding, as relevant to the substantive-due-process claim, that "the substantive due process clause by itself, either in its parental control or its privacy focus, does not give plaintiffs the degree of control over their children's education that their requested relief seeks." *Id.* at 102-03. The court then went on to reject the free-exercise claims as well. *See id.* at 103-07.

A district court is bound by rulings of the Court of Appeals unless and until they are overturned by that court or the Supreme Court. *See Eulitt v. Maine*, 386 F.3d 344, 349 (1st Cir. 2004) ("Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority."), *abrogated on other grounds by Carson ex rel. O.C. v. Makin*, 142 S. Ct. 1987 (2022).

*Mahmoud* clearly abrogated *Parker*'s holding concerning the Free Exercise Clause. *Contrast Parker*, 514 F.3d at 106 ("Requiring a student to read a particular book is generally not coercive of free exercise rights."), *with Mahmoud*, 145 S. Ct. at 2363 ("The Board's introduction of the 'LGBTQ+-inclusive' storybooks, along with its decision to withhold opt outs, places an unconstitutional burden on the parents' rights to the free exercise of their religion."). But *Mahmoud*'s holding was based solely on the Free Exercise Clause, and it did not consider the Due Process Clause as part of its analysis. *See Mahmoud*, 145 S. Ct. at 2400 (Sotomayor, J., dissenting) ("Here, however, the Court's analysis makes no mention of substantive due process rights or the Fourteenth Amendment Due Process Clause."). Accordingly, *Parker*'s substantive-due-process holding remains binding law, and this court is therefore required to apply it. And

because the facts of this case are essentially indistinguishable from those of *Parker*, the motion to dismiss will be granted as to the substantive-due-process claim.

### 2. Procedural Due Process

Defendants next contend that the claim for violation of his right to procedural due process should be dismissed.

The Fourteenth Amendment's Due Process Clause provides that no state may "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Therefore, to state a claim for violation of procedural due process, a complaint must allege that the plaintiff was deprived of "life, liberty, or property."

Plaintiff asserts that he has a "constitutionally protected liberty interest in directing the religious upbringing of his child."  (Pl.'s Opp'n 17, Dkt. No. 49).  It is true, of course, that such a liberty interest exists.  *See Mahmoud*, 145 S. Ct. at 2351.

In this context, plaintiff's claim that due process requires that the government follow certain procedures before depriving him of his liberty interest overlaps entirely with the Supreme Court's definition of the substantive right.  As the Supreme Court defined the right in *Mahmoud*, it is the right to notice when materials that burden plaintiff's religious exercise are to be taught in class and an opportunity to opt his child out of those lessons.  *See Mahmoud*, 145 S. Ct. at 2363-64.  Therefore, the claim that plaintiff did not receive sufficient procedure—that is, that he did not receive sufficient notice before his child was exposed to material to which he objected—essentially restates the substantive First Amendment claim rather than stating an additional claim under the Due Process Clause.  Nonetheless, even though it may make little difference to the ultimate resolution of this action, "[a]t the pleading stage . . . mere redundancy between two separate counts is not a sufficient reason to dismiss a count of the complaint."  *Duncan v. Nissan N. Am., Inc.*, 305 F. Supp. 3d 311, 322 (D. Mass. 2018).

For that reason, the motion to dismiss will be denied as to the procedural due-process claim.

### E.        Massachusetts Constitutional Claims

Defendants contend that the claim under Article 46, § 1 of the Massachusetts Constitution should be dismissed because such claims are evaluated under a different framework than what the Supreme Court uses to interpret the federal free-exercise claim.

Article 46, § 1 of the Massachusetts Constitution provides that "[n]o law shall be passed prohibiting the free exercise of religion."  The Supreme Judicial Court has suggested that this right exceeds the protection provided by the federal Constitution in certain circumstances, but is at least congruent with that of the First Amendment.  *See Care & Prot. of Eve*, 496 Mass. 42, 50 (2025).  Because the complaint states a claim for violation of the First Amendment, it also states a claim for violation of Article 46, § 1 of the Massachusetts Constitution.

Finally, although defendants' motion asks the Court to dismiss the complaint in its entirety, the motion includes no argument concerning Count 5 of the complaint, which asserts a claim under Article 12 of the Massachusetts Declaration of Rights.  Because defendants develop no argument on the point, the Court will not dismiss the claim.

### F.     MCRA

Next, defendants contend that the claim under the Massachusetts Civil Rights Act should be dismissed because the complaint fails to allege that any interference with plaintiff's rights was accomplished by "threats, intimidation, or coercion."  Mass. Gen. Laws ch. 12, § 11H.

The Supreme Judicial Court has held that "[a] direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the [MCRA]." *Longval v. Comm'r of Corr.*, 404 Mass. 325, 333 (1989).  In other words, "threats, intimidation, or coercion" must be separately present in addition to the violation of rights.  *See Sarvis v.*

12

*Boston Safe Deposit & Tr. Co.*, 47 Mass. App. Ct. 86, 93 (1999) (stating that *Longval* "affirmed the requirement under the MCRA that proof of 'threats, intimidation, or coercion' be in addition to the interference with the exercise or enjoyment of secured rights").

The complaint does not allege the existence of any "threats, intimidation, or coercion" separate from the underlying constitutional violation.  Plaintiff correctly notes that under certain circumstances, "coercion" under the MCRA can take the form of "moral force" rather than physical threats.  *See, e.g.*, *Freeman v. Planning Bd.*, 419 Mass. 548, 565 (1995).  But the allegation to which plaintiff cites as an example of this coercion—that "[d]efendants used the coercive force of school policies and J.L.'s compelled attendance . . . to force J.L. to receive instruction that violates [p]laintiff's religious beliefs"—merely restates the underlying constitutional violation.  (Pl.'s Opp'n 18).  As a result, the complaint fails to state a claim under the MCRA.

### G.   <u>Qualified Immunity</u>

Finally, to the extent that the complaint seeks damages against defendants Martinez and So, such claims are not barred by qualified immunity.

The doctrine of qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is determined according to a two-part test.  *See Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009); *Maldonado v. Fontanes*, 568 F.3d 263, 268-69 (1st Cir. 2009).  The relevant inquiries are (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  *Maldonado*, 568 F.3d at 268-69.

13

The question is not whether some right has been clearly established at a highly abstract level, but "whether, under the circumstances that confronted the official, 'a reasonable official would understand that what he is doing violated that right.'" *Berthiaume v. Caron*, 142 F.3d 12, 15 (1st Cir. 1998) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "An officer is entitled to qualified immunity if an objectively reasonable officer could have concluded (even mistakenly) that his or her conduct did not violate the plaintiffs' rights." *Johnson v. City of Biddeford*, 92 F.4th 367, 375 (1st Cir. 2024) (citation modified). The qualified-immunity doctrine "leaves 'ample room for mistaken judgments.'" *Berthiaume*, 142 F.3d at 15 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

To show that an official's conduct violated a clearly established right, the plaintiff bears the burden "to identify controlling authority or a consensus of persuasive authority sufficient to put the officers on notice that their conduct violated the law." *Estate of Rahim v. Doe*, 51 F.4th 402, 412 (1st Cir. 2022); *see also Rivera-Corraliza v. Morales*, 794 F.3d 208, 214-15 (1st Cir. 2015) (noting that a plaintiff's failure to identify such authority dooms their claims). While a prior case need not be identical to clearly establish a right, "[p]recedent involving similar facts can help move a case beyond the otherwise 'hazy border between [improper] and acceptable [conduct]' and thereby provide an officer notice that a specific [act] is unlawful." *Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 18 (2015)). Qualified immunity is an affirmative defense, and the burden is on defendants to show they are entitled to its protection. *DiMarco-Zappa v. Cabanillas*, 238 F.3d 25, 35 (1st Cir. 2001).

As the Court recognized in the preliminary-injunction opinion, "[t]his case is controlled, almost in its entirety, by the recent decision of the United States Supreme Court in *Mahmoud v. Taylor*." *Lexington Pub. Schs.*, 814 F. Supp. 3d at 64-65. The decision in *Mahmoud* clearly

14

established that parents have a right to notice and the opportunity to opt their children out of exposure to content that burdens their religious exercise. *See Mahmoud*, 145 S. Ct. at 2364. Accordingly, because the complaint alleges that defendants did not provide plaintiff with that right, they are not entitled to qualified immunity.

Defendants' attempt to resist this conclusion by pointing to minor factual distinctions between this case and *Mahmoud* is unavailing. They contend that they are entitled to qualified immunity because *Mahmoud* did not specifically address "any process by which school officials must give notice, or any timeframe for such notice to be given." (Defs.' Mot. 18). But *Mahmoud* did clearly establish that *some* notice is required—and the complaint alleges that none was given in several instances. (Compl. ¶¶ 49, 55). Defendants further argue that

> no authoritative or federal appellate court has provided any framework with sufficient specificity that would have caused a reasonable school official in [d]efendants' position to understand they could not present J.L. with mere images of gay-appearing characters or a book describing the existence of same-sex parents who love each other as part of a family where *Mahmoud* addressed a school district that historically allowed and then prohibited religious-based opt-outs, a school curriculum purposefully designed to instruct on LGBTQ+ values, books conveying intense pro-LGBTQ+ messaging and teaching guides intended to shape students' thinking on LGBTQ+ issues, and plaintiffs who requested opt-outs for specific materials as opposed to all Health and DEI classes—all in the setting of compulsory education, no less.

(Defs.' Mot. 18).

To begin, the Court already found at the preliminary-injunction stage that "Families, Families, Families" did not merely "describ[e] the existence of same-sex parents," but instead burdened plaintiff's free-exercise rights in a similar manner to how the Supreme Court described the book "Uncle Bobby's Wedding" in *Mahmoud*. *See Lexington Pub. Schs.*, 814 F. Supp. 3d at 74. And, in any event, to clearly establish law for purposes of qualified immunity, "cases cited need not be directly on point"—that is, every single relevant fact need not be the same. *See Segrain v. Duffy*, 118 F.4th 45, 59 (1st Cir. 2024). Instead, the existing precedent must simply

15

have "placed the . . . constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  *Mahmoud* did so in this case.  For that reason, defendants are not entitled to qualified immunity.

## IV.     Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED as to Counts 2 and 6 of the complaint; GRANTED as to all claims against defendant Julie Hackett; and is otherwise DENIED.

**So Ordered.**

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  July 21, 2026                                        United States District Judge