UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ALAN L., on behalf of himself and his minor child, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 25-13047-FDS |
| LEXINGTON PUBLIC SCHOOLS, et al., | ) | |
| Defendants. | ) | |

ORDER ON PLAINTIFF'S MOTION TO COMPEL TESTIMONY
[Docket No. 62]

October 27, 2026

Boal, M.J.

Plaintiff has moved to compel testimony regarding conversations that occurred during a school officials' meeting on November 5, 2025. Docket No. 62.[1] Defendants maintain that such communications are privileged. This Court heard oral argument on October 7, 2026. For the following reasons, this Court denies the motion.

## I. RELEVANT BACKGROUND

According to the complaint, Plaintiff is a devout Christian who "holds to a biblical view of marriage, gender, and sexuality." Complaint ¶¶ 6, 29. Plaintiff is the parent of a kindergarten student enrolled in Lexington Public Schools. Id. at ¶ 28. He alleges that Defendants violated his constitutional rights to opt his child out of certain classroom materials on the grounds that they conflict with his religious beliefs.

[1] On August 24, 2026, Judge Saylor referred the motion to the undersigned. Docket No. 63.

Plaintiff filed his complaint on October 17, 2025. Docket No. 1. After litigation commenced, Plaintiff indicated that he intended to seek preliminary injunctive relief concerning requested religious accommodations from certain curricular materials. Affidavit of Alexandra M. Gill ("Gill Aff.") at ¶ 4. During that period, counsel for the parties participated in several communications and conferences in an effort to resolve or narrow the dispute. Id. In connection with those discussions, Plaintiff's counsel provided Defendants' counsel with a list of books and other curricular materials for which Plaintiff sought an opt-out, together with proposed terms for resolving the dispute. Id. at ¶ 5.

On November 3, 2025, Attorney Gill contacted Andrea So, the District's Director of Elementary Education, concerning Plaintiff's opt-out list and proposed agreement. Id. at ¶ 6. On November 4, 2025, Attorney Gill requested that District personnel assemble the books and videos identified by Plaintiff for review. Id. at ¶ 7. According to Attorney Gill, she directed the review "so that [she] could obtain information and analysis necessary to evaluate Plaintiff's request for preliminary injunctive relief, advise Defendants concerning their response, and continue discussions with Plaintiff's counsel regarding a potential resolution." Id. at ¶ 8. District personnel conducted that review on November 5, 2025. Id. at ¶ 9. Attorney Gill did not attend that meeting. Id.

The parties ultimately did not reach a resolution and the dispute proceeded to preliminary injunction motion practice. Id. at ¶ 11; see also Docket No. 25. Judge Saylor granted the Plaintiff's motion for a preliminary injunction on December 30, 2025. Docket No. 37. He amended the preliminary injunction later that same day and again on February 10, 2026. Docket Nos. 39, 52.

Plaintiff took the deposition of So, both in her individual capacity and as the Rule

30(b)(6) designee for the Lexington Public Schools. See Docket No. 62 at 2. At her deposition, So testified that the November 5 meeting "was to look at books together and to discuss the synthesis and for me to gain perspectives as I synthesize and analyze the opt-out requests." Docket No. 62-1 at 8. She also testified that they considered whether the books "sought to celebrate or promote LGBTQ+ lifestyle or values and went beyond merely presenting the existence of LGBTQ+ lifestyle or values." Docket No. 65-3 at 9.

Those invited to attend the meeting included elementary principals, assistant principals, and elementary department heads. Id. at 3. No legal counsel for the school district was present at the meeting. Docket No. 62-3 at 2. In a November 4, 2025, email to the invitees, So stated:

> We are working through an opt-out request, and are in need of your perspectives. My apologies for the short notice and I would really appreciate if you could make time to go over some things with me at 8:30 a.m. tomorrow.
>
> Here's a three minute video, explaining the Supreme Court ruling that would be helpful to review before tomorrow's meeting.
>
> A calendar invite will be coming your way shortly. I am happy to explain in more detail over the phone the importance of your presence, feel free to give me a call if you'd like to chat.
>
> Thanks!

Docket No. 62-3 at 2.

In an affidavit submitted in opposition to the instant motion, So states that the November 5 meeting occurred "at the direction of counsel." Affidavit of Andrea So ("So Aff.") at ¶ 5. She also states that, at the start of the meeting, she explained the purpose of the review to those in attendance and "conveyed the advice and direction that had been given to me by counsel regarding the purpose of the review and the manner in which the review should be conducted." Id.

To So's knowledge, "this was the first meeting of department heads and administrators held for the purpose of reviewing materials that were the subject of a request to be exempted from portions of the curriculum for religious reasons." Id. at ¶ 6. She also states that the meeting "was held for the sole purpose of providing information to counsel so that counsel could provide Defendants with legal advice regarding how to proceed with respect to the issue of the preliminary injunction." Id. at ¶ 7. In addition, the meeting "would not have occurred had counsel not directed it to take place." Id. at ¶ 8.

During So's individual and Rule 30(b)(6) depositions, counsel instructed So not to answer questions regarding the substance of the communications among district personnel during the November 5 meeting on the basis of attorney-client privilege and work product protection. See Gill Aff. at ¶ 12. Plaintiff now seeks an order compelling Defendants to testify about the substance of such communications.

## II. ANALYSIS

### A. Standard Of Review

One claiming privilege, "bears the burden of establishing that . . . [the privilege] applies . . . and that it has not been waived." In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003); see also Amgen, Inc. v. Hoecsht Marion Roussel, Inc., 190 F.R.D. 287, 289 (D. Mass. 2000) ("The party claiming the protection of a privilege bears the burden of demonstrating, by a fair preponderance of the evidence, not only that the privilege applies, but also that it has not been waived."). Once a party claiming privilege has carried its initial burden of establishing grounds for asserting the privilege and that the privilege has not been waived, the burden shifts to the opposing party to establish any exceptions to the privilege. Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 17 (1st Cir. 2012).

B. Attorney-Client Privilege

The Defendants maintain that the substance of the communications between district personnel at the November 5 meeting is protected by the attorney-client privilege. Docket No. 65 at 3-7. The attorney-client privilege protects communications made in confidence by a client to his or her attorney in order to obtain legal advice. In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.), 274 F.3d 563, 571 (1st Cir. 2001) (citing United States v. Mass. Inst. of Tech., 129 F.3d 681, 684 (1st Cir. 1997)). The privilege assures both attorneys and clients that discussions regarding their cases which are made in confidence will remain undiscoverable. Amgen Inc., 190 F.R.D. at 289. "Without this assurance, attorneys and clients might be inhibited from engaging in the free, complete and candid exchange of information that is the cornerstone of an effective attorney-client relationship." Id. (quoting Fleet Nat'l Bank v. Tonneson & Co., 150 F.R.D. 10, 13 (D. Mass. 1993)). Nevertheless, "[b]ecause it stands in the way of [the] right to every man's evidence, the privilege applies only to the extent necessary to achieve its underlying goal of ensuring effective representation through open communication between lawyer and client." In re Grand Jury Subpoena, 274 F.3d at 571 (citing Fisher v. United States, 425 U.S. 391, 403 (1976)).

The Plaintiff argues that the November 5 communications do not qualify as privileged because legal counsel was not present during the meeting and because the purpose of the meeting was to discuss curriculum materials and parental opt-outs, not to convey or secure legal advice. Docket No. 62 at 3-5. The absence of counsel, on its own, is not sufficient to disqualify the communications as privileged. Rather, courts have applied the privilege to communications among non-lawyer employees where the purpose of the communication was to provide information to counsel or to aid counsel in providing legal advice. United States v. Anthem, No.

20-CV-2593, 2025 WL 2934999, at *2 (S.D.N.Y. Oct. 15, 2025); see also MöInlycke Health Care US, LLC v. Greenwood Mktg., LLC, No. 22 Civ. 3719, 2024 U.S. Dist. LEXIS 197364, at *7 (S.D.N.Y. Oct. 29, 2024); Crabtree v. Experian Info. Sol., No. 1:16-cv-10706, 2017 WL 4740662, at *2 (N.D. Ill. Oct. 20, 2017).

Attorney Gill and So have attested that the November 5 meeting occurred at the direction of counsel, after litigation had commenced, in connection with Plaintiff's request for preliminary injunctive relief. See Gill Aff. at ¶¶ 2-7; So Aff. at ¶¶ 2-5. Gill requested the review conducted at the meeting to "obtain information and analysis necessary to evaluate Plaintiff's request for preliminary injunctive relief," to "advise defendants concerning their response," and to "continue discussions with Plaintiff's counsel regarding a potential resolution." Gill Aff. at ¶ 8; see also So Aff. at ¶ 7 ("This meeting was held for the sole purpose of providing information to counsel so that counsel could provide Defendants with legal advice regarding how to proceed with respect to the issue of the preliminary injunction."). The results of the meeting were discussed with counsel afterwards. See Docket No. 65-3 at 8.

Plaintiff, on the other hand, questions the Defendants' characterization of the purpose meeting, suggesting that Gill's and So's affidavits are post-meeting rationalizations to attempt to protect the meeting as privileged. See Docket No. 68 at 5 ("[*B]efore a formal legal argument was formed to assert privilege*, So testified that the predominant purpose of the meeting was not to seek legal advice from counsel; it was to render a decision on Plaintiff's opt-out requests.") (emphasis added). So's testimony regarding the meeting, however, is not as straightforward as Plaintiff's characterization. Among other things, it appears that So was unsure which meeting Plaintiff's counsel was asking questions about. See Docket No. 62-1 at 3-4, 6 (stating that she did not recall the purpose of the meeting); 8 (stating that she "did not have an opt out meeting.

This meet is titled looking at book together."); 8 ("This particular meeting, from my recollection, was to look at books together and to discuss the synthesis and for me to gain perspectives as I synthesize and analyze the opt-out requests."); 8-9 (asking counsel to remind her of the timeline when counsel asked for a list of books). In addition, a subsequent email to one of the meeting invitees does suggest that the meeting was convened at the direction of counsel. See Docket No. 62-3 at 4 (stating "sorry for the last minute ask, the attorney is not leaving me a lot of choices.").

In any event, this Court finds that the Defendants have failed to show that the meeting was protected by the attorney-client privilege because there is no evidence in the record that the meeting was confidential. So's email scheduling the meeting was sent to a large number of participants; does not copy legal counsel; and does not state anything about the meeting being confidential. It is also not clear who the invitees were and why they were necessary for the discussion. Finally, there is no indication that the meeting participants were instructed to keep the meeting discussion confidential. Defendants, therefore, have failed to meet their burden with respect to confidentiality.

C. Work Product Protection

Defendants also argue that the discussions at the November 5 meeting are protected by the work product doctrine. The work product doctrine protects (1) documents or other things,[2]

[2] It appears that Plaintiff is arguing that the work product doctrine does not apply because he seeks discovery of oral communications, not documents or things, but he does not develop the argument. See Docket No. 68 at 7 ("Plaintiff seeks testimony from Defendants, including Defendant So, regarding verbal communications occurring during the November 5 meeting—not written notes or emails."). Some courts apply the doctrine to oral communications and this Court agrees with that reasoning. See, e.g., U.S. ex rel (Redacted) v. (Redacted), 209 F.R.D. 475, 478 (D. Utah 2001); In re Cendant Corp. Sec. Litig., 343 F.3d 658, 662 (3d Cir. 2003) (noting that work product protection under Hickman applies also to intangible things); see also In Re Grand Jury Subpoena, 220 F.R.D. 130, 141 (D. Mass. 2004) ("[U]nlike Hickman, Rule 26(b)(3) does not reach 'intangible' work product, but Rule 26(b)(3) more clearly protects non-attorney work product than Hickman does.").

(2) prepared in anticipation of litigation, (3) by or for a party or a party's representative.[3] Fed. R. Civ. P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495 (1947). "The underlying purpose of the work product doctrine is to protect the integrity of the adversarial process by creating a zone of privacy for those matters prepared by or for the party or the party's counsel in anticipation of litigation." Amgen Inc., 190 F.R.D. at 290. There are two categories of work product: opinion work product, which encompasses "mental impressions, conclusions, opinions or legal theories of an attorney," and fact or ordinary work product, which "embrac[es] the residue." In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1014 (1st Cir. 1988).

A document is entitled to protection if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation." State of Maine v. U.S. Dep't of Interior, 298 F.3d 60, 68 (1st Cir. 2002) (emphasis in original) (quoting United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998)). The "because of" standard is intended to sweep in a broader universe of documents than simply those "prepared primarily or exclusively to assist in litigation." In re Grand Jury Subpoena, 220 F.R.D. 130, 146 (D. Mass. 2004) (internal citation and quotation omitted). However, the standard does not protect "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." Maine, 298 F.3d at 70.

Here, this litigation was pending when the meeting occurred. As discussed above, Defendants have represented that the meeting occurred at the direction of counsel in connection with Plaintiff's request for preliminary injunctive relief. See Gill Aff. at ¶¶ 2-7; So Aff. at ¶¶ 2-

[3] Federal courts apply federal law when addressing the work product doctrine. Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co., 173 F.R.D. 7, 11 (D. Mass. 1997).

5. At oral argument, counsel for the Defendants explained that this was the first and only meeting of its kind to date. Generally, per Defendants' counsel, So has the final decision-making authority for opt-out requests and, as such, she would not call for a meeting in connection with opt-out requests in the ordinary course. See So Aff. at ¶¶ 6-8. Rather, Attorney Gill requested the meeting in connection with the Defendants' response to the Plaintiff's motion for a preliminary injunction. Gill Aff. at ¶ 8. Therefore, this Court finds that the meeting was conducted because of litigation.

In addition, the Defendants' failure to show confidentiality does not defeat the protection of the work product doctrine. See Blattman v. Scaremellino, 891 F.3d 1, 5 (1st Cir. 2018) (citation omitted) ("[D]isclosure of work-product to a third-party does not necessarily waive the protection; 'only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection.'"). Accordingly, this Court finds that the meeting is protected by the work product doctrine.

## III. ORDER

For the foregoing reasons, this Court denies Plaintiff's motion to compel.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
U.S. MAGISTRATE JUDGE